# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No.** _____

sticky.io, Inc., a Delaware Corporation,

    Plaintiff,

vs.

Martingale Software, LLC, a Colorado Limited Liability Company, Jonathan Bischoff, individually, Walter Long, individually, and Laura Wallace Turner, individually,

    Defendants.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff, sticky.io, for its Complaint against Defendants, Martingale Software, LLC, Jonathan Bischoff, Walter Long, and Laura Wallace Turner, states and alleges as follows:

### Parties, Jurisdiction, and Venue

1. sticky.io, Inc. ("sticky.io") is a Delaware corporation having its principle place of business located at 150 Spear Street, Suite 900, San Francisco California 94105. sticky.io was formerly known as LimeLight.

2. Martingale Software, LLC ("Martingale Software") is a Colorado Limited Liability Company having its principle place of business located at 1999 Broadway, Ste. 1470, Denver, Colorado.

3. Jonathan Bischoff is an individual, who is a resident of Colorado and Chief Executive Officer of Martingale Software.

4.     Walter Long is an individual, who is a resident of Colorado and employed by Martingale Software.

5.     Laura Wallace Turner is an individual, who is a resident of Colorado and Vice President of Customer Success at Martingale Software.

6.     Jurisdiction is proper in this court under 28 U.S.C. §1331 because this action arises under the laws of the United States. Jurisdiction over state law claims is proper in this court under 28 U.S.C. § 1367 because they form part of the same case and controversy.

7.     Venue is proper in this court because all Defendants are residents of Colorado.

## General Allegations

8.     Bischoff and Long are both a former employee of a company called RevGuard, LLC, which was shut down by the Federal Trade Commission for illegal and questionable business practices. Ex. 1, Complaint, *Federal Trade Commission v. RevMountain, LLC*, United States District Court, District of Nevada, Southern Division, Case No. 17-CV-02000-APG-GWF; Ex. 2, (stipulated judgment).

9.     Among other things, Bischoff, Long, and Turner are using Martingale Software to surreptitiously infiltrate customer relationship management software ("CRM") created by sticky.io and others, to steal trade secrets and confidential information. The Defendants then use this information to compete, unfairly, with sticky.io. Most egregiously, they have been abusing this information to engage in a calculated pattern of consumer fraud.

10.    sticky.io has invested substantial time, effort, and money to create and operate its own CRM. This product has enabled thousands of ecommerce businesses to legitimately and legally manage their backend operations on a unified ecommerce platform.

11. sticky.io provides its merchant clients with access to its CRM via licensing agreements. Exhibit 3 attached hereto contains the general terms and conditions accepted by every merchant using sticky.io's CRM platform ("Partner Terms and Conditions"). Ex. 3, Partner Terms and Conditions.

12. Importantly, sticky.io allows its users to access their own data for analytical purposes. Partner Terms and Conditions at p.5 (¶13.b). This means that third parties who are given permission by a legitimate user can also access that data to assist with analysis, subject to the terms and conditions by which sticky.iousers have agreed to be bound.

13. The Defendants have gained access to sticky.io's CRM by selling software called "Analyzr" to these legitimate users. The users are required to provide their credentials to the Defendants. Once inside sticky.io's platform, using the credentials of sticky.io's unsuspecting users, the Defendants proceed to reverse engineer sticky.io's CRM to learn how sticky.io's systems and methods have been deployed.

14. Specifically, the Defendants used sticky.io's customer portal and user interface to (1) identify how the services offered by sticky.io function; (2) reverse engineer sticky.io's CRM product; and (3) obtain information needed to understand and deploy sticky.io's proprietary methods for Martingale Software's own benefit.

15. In other words, Analyzr is just a front for the Defendants to gain access to sticky.io's CRM, which includes confidential and proprietary trade secret information. This information is then unfairly used to undermine the interests of trusting clientele and compete directly with sticky.io.

16. The Defendants have a second software program called "M1." The Defendants' M1 software searches sticky.io's CRM for existing orders looking for customers who have agreed

to a "free trial" of a product, but have not yet consented to an ongoing order for that product. Ongoing orders are called subscriptions.

17. At the behest of MasterCard, Visa, and their sponsor banks, sticky.io has employed safeguards, including "consent workflows," to prevent unscrupulous operators, like the Defendants, from engaging in illegal and questionable business practices. Notwithstanding sticky.io's compliance with the requisite safeguards, Defendants have worked in concert to undermine those protections.

18. To avoid sticky.io's consent workflow safeguards, the Defendants engage in "transaction laundering." To do this they first put an existing "free trial" agreement with a legitimate merchant on hold. They then create an entirely new order, using their unauthorized access, and reroute it as a brand new subscription transaction over a new "mid." This makes it appear that there is consent to the new subscription, which the customer never actually agreed to.

19. To further avoid detection, the Defendants describe the product subscription vaguely, such as "Martingale_Dynamic_Downsale (###)."

20. As a result of the deceptive and unfair practices engaged in by the Defendants, the consumers who are victimized by the Defendants' conduct cannot easily avoid the subscription charges. Opting out of the subscription is made difficult to do, thereby allowing the Defendants to maximize the potential income from their scheme.

21. When the consumer discovers that they have been signed up for a monthly subscription by the Defendants, which is done using existing credit card and other personal information from the consumer, the consumers report the transactions to the credit card companies. The credit card companies then initiate a chargeback against the merchant involved.

22.     A high number of chargebacks is an indication that the charging entity is engaged in fraud.

23.     To avoid incurring high numbers of chargebacks for a single merchant, the Defendants spread the load of unauthorized subscriptions across many merchant identification numbers. This fraudulent misconduct makes it difficult to detect the deception.

24.     Spreading the unauthorized subscriptions across many merchants is called "load balancing." Load balancing is prohibited by the Federal Trade Commission, the credit card companies, their sponsor banks, and by sticky.io's merchant agreements. Partner Terms and Conditions at p.1.

25.     sticky.io has identified over 1 million search requests within its platform seeking information on free trial orders that did not result in consent to a subscription.

26.     sticky.io has identified more than 1,000 new orders created using the Defendant's scheme.

27.     Multiple usernames clearly created by and used by the Defendants to advance their illegal and unconscionable scheme exist on sticky.io's system.  These include, without limitation:

   a. Martingale Software

   b. AnalyzrAPI

   c. MartingalAZ

   d. Martingale_apih

   e. Laura Turner

   f. lturner

   g. Jonathan Bishoff

   h. JonathanB

      i. giga_analyzer

      j. API_Martingale

      k. Analyzr-DA

      l. Analyzr-PosWeb

28. To further guard against unfair competition as well as the Defendants' illegal and questionable business practices, sticky.io requires all of its merchants to sign a licensing agreement containing the Partner Terms and Conditions.

29. As part of the license agreement, merchants are required to agree to confidentiality as well as non-competition and non-solicitation provisions before accessing sticky.io's services.

30. More specifically, the merchants acknowledge that "sticky.io's Confidential Information includes, without limitation, the sticky.io Services, the software and information related thereto, and the underlying software, hardware, and other technology used by sticky.io to provide the sticky.io Services." Partner Terms and Conditions at p.7 (¶16).

31. In addition, the merchants agree that they will not, "during the term of the Agreement and for one year thereafter, … develop, offer, sell or distribute a competing service to the sticky.io Service, nor will it solicit, employ, offer to employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who is or was an employee of the Company at any time or in any manner induce or attempt to induce any employee of sticky.io to terminate the employee's employment with sticky.io."

32. Of paramount importance, each merchant also "agrees that any of its representatives, employees, or any person or entity acting on its behalf with respect to the provision of or use of the Services, shall be bound by, and shall abide by, the Agreement." Partner Terms and Conditions at p.1.

33. The Defendants know or should know that they are subject to the licensing agreements between sticky.io and sticky.io's merchants.

34. Because of their conduct, the Defendants have breached agreements between sticky.io and sticky.io's merchants, putting sticky.io in a position adverse to its merchant clients.

## FIRST CLAIM FOR RELIEF

### Misappropriation of Trade Secrets in violation of 18 U.S.C. § 1836
### (against all Defendants)

35. sticky.io realleges the allegations contained in paragraphs 1 through 34 as though fully set forth herein.

36. sticky.io's CRM is a product or service used in and intended for use in interstate or foreign commerce.

37. sticky.io's CRM relies upon the use of sticky.io's trade secrets, as defined by 18 U.S.C. §1839. These trade secrets, include, without limitation, proprietary and superior technology that separates and maintains a distinction between merchants and their competitors. sticky.io provides for the most powerful transaction routing in the industry, so that large and small merchants that own multiple companies can efficiently route and track transactions separately between each merchant identification number. This separation provides for accurate and compliant transaction routing while at the same time allowing multi-business owners to track and compare the performance of their business units.

38. sticky.io has taken reasonable measures to keep its trade secrets secure and confidential by taking measures that include, without limitation:

   a. License agreements with sticky.io's merchant clients that contain non-compete, non-solicitation, and confidentiality provisions;

  b. The requirement of a username and password to access sticky.io's CRM, which can only be obtained if a user agrees to sticky.io's license terms and conditions;

  c. A requirement that anyone accessing sticky.io's CRM on behalf of a client, including the Defendants, agree to sticky.io's license terms and conditions;

39. sticky.io's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

40. Martingale Software misappropriated sticky.io's trade secrets in one or more of the following ways:

  a. Martingale Software acquired trade secrets knowing or having reason to know that the trade secrets were acquired by improper means;

  b. Martingale Software used trade secrets without express or implied consent by using improper means to acquire knowledge of the trade secrets;

  c. At the time of disclosure or use, Martingale Software knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had used improper means to acquire the trade secret;

  d. At the time of disclosure or use, Martingale Software knew or had reason to know that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; and/or

  e. At the time of disclosure or use, Martingale Software knew or had reason to know that the knowledge of the trade secret was derived from or through a person who

owed a duty to sticky.io to maintain the secrecy of the trade secret or limit the use of the trade secret.

41. Martingale Software's misappropriation was done willfully and maliciously.

42. sticky.io was damaged by Martingale Software's misappropriation of trade secrets.

43. sticky.io is entitled to injunctive relief to prevent any actual or threatened misappropriation of its trade secrets by Martingale Software, including that affirmative actions being taken to protect sticky.io's trade secrets.

44. sticky.io has been forced to retain counsel and pay a reasonable fee to enforce its trade secret rights.

## SECOND CLAIM FOR RELIEF

### Tortious Interference With A Business Relationship
### (against all Defendants)

45. sticky.io realleges the allegations contained in paragraphs 1 through 44 as though fully set forth herein.

46. The Defendants were, at all material times, aware of the license agreements between sticky.io and sticky.io's merchant clients.

47. The Defendants and sticky.io shared these merchant clients, which enabled the Defendants to access sticky.io's CRM product using the merchant's identification and credentials.

48. The Defendants intended to cause the merchant clients to breach their license agreements because they knew or should have known the merchant clients were bound to prevent the Defendants from engaging in illegal, unfair, deceptive, and questionable business practices.

9

49. The Defendants, through their clandestine and improper actions, caused the merchant clients to breach the licensing agreements or made it impossible for the merchant clients to detect the Defendants' conduct to stop it.

### THIRD CLAIM FOR RELIEF

### Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030)
### (against all Defendants)

50. sticky.io realleges the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51. The Defendants intentionally accessed one or more computers, as defined by 18 U.S.C. §1030(e)(1), without authorization or in excess of their authorized access, and thereby obtained information from a computer used in or affecting interstate or foreign commerce or communication ("Protected Computer").

52. The Defendants knowingly and with intent to defraud, accessed one or more Protected Computers without authorization, or exceeded their authorized access, and by means of such conduct furthered the intended fraud and obtained information having value.

53. sticky.io may maintain a private civil action against the Defendants because it suffered damage or loss by reason of the Defendant's violation of the Computer Fraud and Abuse Act. 18 U.S.C. §1030(g).

54. sticky.io has suffered damages because of the Defendants unauthorized access of sticky.io's Protected Computers.

55. sticky.io is entitled to compensatory damages and injunctive relief as a result of Defendant's violation of the Computer Fraud and Abuse Act. 18 U.S.C. §1030(g).

### FOURTH CLAIM FOR RELIEF

### Unfair and Deceptive Trade Practices

**in violation of Colo. Rev. Stat. § 6-1-105**
**(against all Defendants)**

56. sticky.io realleges the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

57. The Defendants' use of multiple usernames and merchant identifications to hide their illegal and deceptive negative option marketing and transaction laundering scheme constitutes an unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

58. The Defendants' conduct in suspending a legitimate free trial offer and entering an independent subscription for products using sticky.io's CRM constitutes an unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

59. The Defendants either knowingly or recklessly engaged in the foregoing conduct, all of which constitutes an unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

60. The Defendants actions constitute fraudulent, willful, knowing, or intentional conduct that caused injury to sticky.io.

61. As a result of the Defendants actions, sticky.io suffered damages.

62. sticky.io has had to retain counsel and pay them a reasonable fee as a result of the Defendant's unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. An Order providing injunctive relief preventing all actual or threatened misappropriation of trade secrets, including affirmative action to protect sticky.io's trade secrets; and

B. An Order providing injunctive relief preventing all actual or threatened interference with sticky.io's business relationships; and

C. An Order providing injunctive relief preventing access of sticky.io's Protected Computers and returning or destroying all information acquired through such access; and

D. An Order awarding Plaintiff damages for actual loss caused by the misappropriation of trade secrets;

E. An Order awarding Plaintiff damages for actual loss caused by the interference with sticky.io's business relationships;

F. An Order awarding Plaintiff damages for unjust enrichment caused by the misappropriation of trade secrets that is not addressed in the computation of damages for actual loss;

G. An Order awarding Plaintiff compensatory damages for losses caused by the Defendant's access of sticky.io's Protected Computers; and/or

H. In lieu of damages measured by any other methods, an Order awarding Plaintiff the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;

I. An Order awarding Plaintiff the greater of:

      a.      The amount of actual damages sustained, including prejudgment interest of either eight percent per year or at the rate provided in Colo. Rev. Stat. § 13–21–101, whichever is greater, from the date the claim accrued; or

      b.      Five hundred dollars; or

      c.      Three times the amount of actual damages sustained because of the Defendants' bad faith conduct; and

J.      the costs of the action together with reasonable attorneys' fees as determined by the court;

K.      Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all appropriate issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: March 5, 2021

**RESPECTFULLY SUBMITTED,**

*/s/ Michael Freimann*
Michael Freimann
**GREENSPOON MARDER LLP**
1401 Lawrence Street, Suite 1900
Denver, CO  80202
Telephone:  303.665.0860
Email:  michael.freimann@gmlaw.com

Erin Mullen
**GREENSPOON MARDER LLP**
1401 Lawrence Street, Suite 1900
Denver, CO  80202
Telephone:  303.665.0860
Email: erin.mullen@gmlaw.com

13

        s/ *Howard D. DuBosar*
Howard D. DuBosar
(Application is forthcoming)
**WEISS SEROTA HELFMAN COLE & BIERMAN, PL.**
1200 N. Federal Highway
Suite 312
Boca Raton, Florida 33432
Telephone: (561) 835-2111
Email: HDuBosar@wsh-law.com

Eric P. Hockman
(Application is forthcoming)
**WEISS SEROTA HELFMAN COLE & BIERMAN, PL.**
1200 N. Federal Highway
Suite 312
Boca Raton, Florida 33432
Telephone: (561) 835-2111
Email: EHockman@wsh-law.com

*Attorneys for Plaintiff sticky.io*