IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00664-RM-STV

STICKY.IO, INC.,

    Plaintiff,

v.

MARTINGALE SOFTWARE, LLC,
JONATHAN BISCHOFF,
WALTER LONG, and
LAURA WALLACE TURNER,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendants' Motion to Dismiss (the "Motion"). [#12]  The Motion has been referred to this Court.  [#22]  The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

**I.    BACKGROUND**[1]

    Plaintiff created and operates customer relationship management software ("CRM"). [#1 at ¶ 10]  Plaintiff provides its merchant clients with access to its CRM via licensing agreements.  [*Id.* at ¶ 11]  Pursuant to these licensing agreements, Plaintiff

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint [#1], which must be taken as true when considering the Motion. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

allows its users to access their own data for analytical purposes. [*Id.* at ¶ 12] Third parties who are given permission by a legitimate user can also access this data to assist with analysis, subject to the terms and conditions of the licensing agreements. [*Id.*]

As part of these licensing agreements, merchants are required to agree to confidentiality as well as non-competition and non-solicitation provisions. [*Id.* at ¶ 29] More specifically, the merchants acknowledge that "[Plaintiff's] Confidential information includes, without limitation, the [Plaintiff's] Services, the software and information related thereto, and the underlying software, hardware, and other technology used by [Plaintiff] to provide the [Plaintiff's] Services." [*Id.* at ¶ 30; *see also* #1-4 at 8[2]] Additionally, the merchants agree that they will not "develop, offer, sell or distribute a competing service to the [Plaintiff's] Service." [#1 at ¶ 31; *see also* #1-4 at 8] Each merchant further "agrees that any of its representatives, employees, or any person or entity acting on its behalf with respect to the provision or use of the Services, shall be bound by, and shall abide by, the [licensing agreement]." [#1 at ¶ 32; *see also* #1-4 at 1]

Defendant Jonathan Bishoff[3] is the Chief Executive Officer of Defendant Martingale Software, LLC ("Martingale").[4] [#1 at ¶ 3] Defendant Laura Wallace Turner

---

[2] The licensing agreements were referenced in the Complaint and a copy of a licensing agreement was attached to the Complaint. [*See* ##1; 1-4] As a result, the licensing agreement attached to the Complaint is properly considered by the Court in evaluating the Motion. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference." (citations omitted)).
[3] Defendant Bishoff's name was misspelled in the Complaint. [#12 at 1 n.1] The Court uses the correct spelling herein.
[4] According to Defendants, the correct corporate entity is Martingale Media, LLC. [#12 at 1 n.1]

is the Vice President of Success for Martingale.  [*Id.* at ¶ 5]  Defendant Walter Long is an employee of Martingale.  [*Id.* at ¶ 4]  Defendants Bishoff and Long were former employees of RevGuard, LLC, a company that was shut down by the Federal Trade Commission for illegal and questionable business practices.  [*Id.* at ¶ 8]

According to the Complaint, Defendants have gained access to Plaintiff's CRM by selling software called "Analyzr" to Plaintiff's legitimate users.  [*Id.* at ¶ 13]  The users are required to provide their credentials to Defendants.  [*Id.*]  Once inside Plaintiff's platform, using the credentials provided by Plaintiff's legitimate users, "Defendants proceed to reverse engineer [Plaintiff's] CRM to learn how [Plaintiff's] systems and methods have been deployed."  [*Id.*]  Specifically, Defendants "used [Plaintiff's] customer portal and user interface to (1) identify how the services offered by [Plaintiff] function; (2) reverse engineer [Plaintiff's] CRM product; and (3) obtain information needed to understand and deploy [Plaintiff's] proprietary methods for [Martingale's] own benefit."  [*Id.* at ¶ 14]

Defendants have a second program called M1.  [*Id.* at ¶ 16]  M1 searches Plaintiff's CRM for existing orders, looking for customers who have agreed to a free trial of a product but have not yet consented to an ongoing order (a "subscription") for that product.  [*Id.*]  When M1 discovers such a transaction, Defendants place the legitimate free trial on hold.  [*Id.* at ¶ 18]  Defendants then create a new transaction that makes it falsely appear that the customer has agreed to an ongoing subscription.  [*Id.*]  Plaintiff has identified more than 1,000 new orders created using Defendants' scheme.  [*Id.* at ¶ 26]  Though not entirely clear from the Complaint, Defendants appear to benefit

financially from this transaction.  [*Id.* at ¶ 20 (indicating that Defendants receive "potential income" from their scheme)][5]

Once the consumer discovers that they have been signed up for a monthly subscription, the consumer reports the transactions to the credit card companies.  [*Id.* at ¶ 21]  The credit card companies then initiate a chargeback against the merchant involved.  [*Id.*]  A high number of chargebacks is an indication that the charging entity is engaged in fraud.  [*Id.* at ¶ 22]  To avoid incurring high numbers of chargebacks for a single merchant, Defendants spread the load of unauthorized subscriptions across many merchant identification numbers, an unauthorized practice called "load balancing."  [*Id.* at ¶¶ 23-24]

On March 5, 2021, Plaintiff initiated the instant action.  The Complaint brings four claims against all Defendants:  (1) misappropriation of trade secrets [*id.* at ¶¶ 35-44]; (2) tortious interference with a business relationship [*id.* at ¶¶ 45-49]; (3) violation of the Computer Fraud and Abuse Act ("CFAA") [*id.* at ¶¶ 50-55]; and (4) unfair and deceptive trade practices in violation of the Colorado Consumer Protection Act ("CCPA") [*id.* at ¶¶ 56-62].  Defendants have moved to dismiss the Complaint in its entirety.  [#12]  Plaintiff has filed a response [#21] and Defendants have replied [#28].  In response to an Order from this Court [#42], on October 22, 2021, Plaintiff submitted a supplemental response.  [#44]

---

[5] In Plaintiff's description of relevant facts set forth in its response, Plaintiff states that the "proceeds from the subscription sales are routed to the Defendants, who have never provided anything in exchange for the payments."  [#21 at 3]  Notably, in making this assertion, Plaintiff does not cite to a specific paragraph from the Complaint.  [*Id.*]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III. ANALYSIS

Defendants have moved to dismiss all claims asserted against them, arguing generally that Plaintiff has failed to state a claim for relief with respect to any of the four claims. [*See generally* #12] Separately, Defendants Long, Turner, and Bishoff (collectively the "Individual Defendants") argue that there is no basis to name them as individual defendants in this action. [*Id.* at 5-6] For the reasons outlined herein, the Court concludes that Plaintiff has failed to adequately plead any of its four claims, and therefore the Court need not separately address the Individual Defendants' arguments.

**A. Claim One: Misappropriation of Trade Secrets**

Defendants contend that they are entitled to dismissal of Plaintiff's claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"). [#12 at 7-10] A plaintiff asserting a DTSA claim must establish: "(1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F.Supp.3d 1163, 1175 (D. Colo. 2019) (quoting *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018)); *see also* 18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839. Defendants challenge each of the three elements of Plaintiff's trade secret claim. [#12 at 7-10] Because the Court agrees that Plaintiff has not plausibly alleged the existence of a trade secret, the Court does not address the second or third elements of Plaintiff's claim.

6

The DTSA defines the term "trade secret" "broadly to include 'all forms and types of financial, business, scientific, technical, economic, or engineering information' so long as 'the owner thereof has taken reasonable measures to keep such information secret' and 'the information derives independent economic value, actual or potential, from not being generally known to,' or ascertainable by, another person." *Arctic Energy*, 2018 WL 1010939, at *2 (quoting 18 U.S.C. § 1839(3)). "To plausibly allege ownership of a trade secret, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 17-CV-00808-DAD-EPG, 2018 WL 2463869, at *3 (E.D. Cal. June 1, 2018) (quotation omitted). However, "[a] plaintiff in a trade secret case need not lay out every minute detail of its claimed trade secret at the outset of the litigation." *Id.* (quotation omitted).

"[C]ases rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process." *SBM Site Servs., LLC v. Garrett*, No. 10-CV-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012). Nonetheless, "the complaint must do more than describe the subject matter of the trade secrets in a vague and conclusory manner." *E. & J. Gallo Winery*, 2018 WL 2453869, at *3 (quotation omitted); *see also Broker Genius, Inc. v. Zalta*, 280 F.Supp.3d 495, 515 (S.D.N.Y. 2017) (stating that although plaintiffs are not required to identity trade secrets "with any particular degree of specificity, . . . a vague and indefinite piece of information cannot be protected as a trade secret" (quotation omitted)). Instead, the plaintiff must

7

"plead facts sufficient to provide notice of the factual basis for its trade secret claims." *Packaging Corp. of Am. v. Croner*, 419 F.Supp.3d 1059, 1065 n.3 (N.D. Ill. 2020).

Here, Plaintiff's trade secret claim falls into one of those "extreme cases" where the Court recommends dismissal "for lack of specificity on the pleadings." *SBM Site Servs., LLC*, 2012 WL 628619, at *10. The Complaint describes the trade secrets only once, defining them as "proprietary and superior technology that separates and maintains a distinction between merchants and their competitors."[6] [#1 at ¶ 37] The Complaint does not contain any further description of this "proprietary and superior technology" nor does it explain how the technology "separates and maintains a distinction between merchants and their competitors." This vague description is wholly insufficient to provide Defendants "notice of the factual basis for [Plaintiff's] trade secret claims."[7] *Packaging Corp. of Am.*, 419 F.Supp.3d at 1065 n.3. Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED to the extent it seeks dismissal of Plaintiff's trade secret claim. *Zirvi v. Flatley*, 433 F.Supp.3d 448, 465 (S.D.N.Y. 2020) (dismissing trade secret claim where plaintiffs "failed to identity their

---

[6] In its response, Plaintiff also refers to allegations referencing Plaintiff's "Services, the software and information related thereto, and the underlying software, hardware, and other technology used by [Plaintiff]." [#21 at 9 (quoting #1 at ¶ 30)] But that allegation was referencing the merchant acknowledgment found in the licensing agreement and the Complaint does not allege that Defendants misappropriated all of Plaintiff's services, software, hardware, and other technology.

[7] The sole case cited by Plaintiff in support of its contention that it has adequately described its trade secret is readily distinguishable. [#21 at 9 (citing *Wright Med. Tech., Inc. v. Paragon 28, Inc.,* 2019 WL 4751807 (D. Colo. Sept. 30, 2019)] In *Wright Medical*, the plaintiff "set[] out its purported trade secrets in detail, including [p]roduct cost and pricing information, . . . pricing strategies . . . customer demand and purchasing information, . . . the terms of customer and supplier contracts, and [k]nowledge of [the plaintiff's] surgical consultants/[key opinion leaders], . . . consulting contract provisions, [and] ownership of [intellectual property] and compensation." *Id.* at 3 (quotation omitted). By contrast, here, Plaintiff has failed to provide any detail about the trade secrets that Defendants have allegedly misappropriated.

alleged secrets with sufficient particularity in order to apprise the defendants and the Court what information contained in the alleged . . . trade secrets is truly secret and what information is not" (quotation omitted)); *Decurtis LLC v. Carnival Corp.*, No. 20-22945-Civ-SCOLA/TORRES, 2021 WL 1968327, at *6 (S.D. Fla. Jan. 6, 2021) (recommending dismissal of trade secret claim where the trade secrets include "software, prototypes, hardware, database structures, operations procedures, testing plans, and other categorical descriptions" because "all information concerning a product . . . is not a trade secret" (quotation omitted)), *report and recommendation adopted as amended on other grounds* 2021 WL 1540518 (S.D. Fla. Apr. 20, 2021); *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20 CV 9779-LTS, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) ("[G]eneral and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining, for example, how such strategies, techniques or models function, how [plaintiff] derives value from them, or what [plaintiff] specifically does to ensure their secrecy."); *Tri Cty. Tel. Ass'n, Inc. v. Campbell*, No. 17-CV-89-F, 2017 WL 11497264, at *6 (D. Wyo. July 19, 2017) (dismissing trade secret claim where complaint reiterated the definition of a trade secret and asserted that the trade secrets were related to the products but failed to identify the trade secret with sufficient specificity and therefore failed to put the defendants on sufficient notice of the trade secret claim). Nonetheless, because it is possible that Plaintiff could plausibly plead a trade secret claim, the Court RECOMMENDS that Claim One be DISMISSED WITHOUT PREJUDICE. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990)

(holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### B. Claim Two: Tortious Interference

Claim Two alleges tortious interference with a business relationship. [#1 at ¶¶ 45-49] "A claim for tortious interference with current business relations requires plaintiffs to show that the defendant '(1) was aware of the existence of the contract; (2) intended that one of the parties breach the contract; (3) induced the party to breach the contract or make it impossible for him or her to perform; and (4) acted "improperly" in causing the breach.'" *AMG Nat'l Corp. v. Wright*, No. 20-cv-02857-PAB-KLM, 2021 WL 4170459, at *10 (quoting *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009)). Defendants make several arguments in favor of dismissal of Plaintiff's tortious interference claim. [#12 at 10-14] Because the Court agrees that Plaintiff has failed to plausibly allege that its clients breached their licensing agreements, the Court does not address Defendants' other arguments.

According to the Complaint, Defendants induced the "merchant clients to breach their lease agreements because they knew or should have known the merchants clients were bound to prevent the Defendants from engaging in illegal, unfair, deceptive, and questionable business practices." [#1 at ¶ 48] But the Complaint does not provide the source for the merchant clients' obligation to "prevent the Defendants from engaging in illegal, unfair, deceptive, and questionable business practices." And the licensing agreement attached to the Complaint does not contain any such obligation. [*See generally* #1-4] Thus, even if Defendants did engage in illegal, unfair, deceptive, or

10

questionable business practices, such conduct did not result in the merchant clients' breach of the licensing agreements or any other agreement identified in the Complaint.

In its response, Plaintiff suggests that Defendants caused the merchant clients to breach the confidentiality, non-competition, and non-solicitation provisions of the licensing agreements by inducing the merchant clients to provide their login information to Defendants. [#21 at 14] But the Complaint alleges that the merchant clients may give permission to a legitimate user to access the clients' data [#1 at ¶ 12] and that Defendants obtained merchants clients' credentials from "unsuspecting users" [*id.* at ¶ 13]. Thus, it is unclear how the merchant clients could possibly breach the confidentiality, non-competition, and non-solicitation provisions of the licensing agreement by giving their login information to an entity they mistakenly believed to be a legitimate user. In any event, the Complaint does not plausibly make this connection. Accordingly, the Court respectfully RECOMMENDS that Plaintiff's tortious interference claim be DISMISSED. Nonetheless, because it is possible that Plaintiff could plausibly plead a tortious interference claim, the Court RECOMMENDS that Claim Two be DISMISSED WITHOUT PREJUDICE. *Reynoldson*, 907 F.2d at 127.

### C. Claim Three: Violation of the Computer Fraud and Abuse Act

The Complaint next asserts that Defendants violated the CFAA. [#1 at ¶¶ 50-55] The CFAA is a criminal statute but it authorizes "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Nonetheless, a CFAA civil action may only be brought if the conduct involved one of the factors set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(I-V). 18 U.S.C.

11

§ 1030(g).  Here, the only potential such conduct is conduct resulting in "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).

Here, Plaintiff has failed to plead any particular loss[8] from the alleged unauthorized access, let alone loss aggregating at least $5,000 in value.[9]  As a result, Plaintiff has failed to plausibly plead a civil CFAA claim.  *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, No. 16-1718, 2019 WL 2137428, at *5 (E.D. Pa. May 16, 2019) (dismissing CFAA claim for failure to adequately plead $5,000 loss); *Delacruz v. State Bar of Cal.*, No. 5:14-cv-05336-EJD, 2015 WL 5697365, at *5-6 (N.D. Cal. Sept. 29, 2015) (stating that $5,000 loss is an element that must be plausibly pled and dismissing complaint for failure to adequately plead loss); *CareersUSA, Inc. v. Guerrero*, No. 14-80096-Civ-Scola, 2014 WL 12862259, at *3 (S.D. Fla. Aug. 25, 2014) (dismissing CFAA claim for failure to adequately plead $5,000 loss); *New South Equip. Mats, LLC v. Keener*, 989 F.Supp.2d 522, 530-31 (same).  Accordingly, the Court respectfully RECOMMENDS that Plaintiff's CFAA claim be DISMISSED.  Nonetheless, because it is possible that Plaintiff could plausibly plead a CFAA claim, the Court RECOMMENDS that Claim Three be DISMISSED WITHOUT PREJUDICE.  *Reynoldson*, 907 F.2d at 127.

---

[8] Plaintiff's Complaint contains only the conclusory statements that Plaintiff "suffered damage or loss by reason of [Defendants'] violation of the [CFAA]" and that Plaintiff "has suffered damages because of the Defendants unauthorized access of [Plaintiff's] Protected Computers."  [#1 at ¶¶ 53, 54]

[9] Though Defendants do not specifically reference the $5,000 loss amount, they do argue that Plaintiff has failed to adequately allege loss.  [#12 at 16]

### D.  Claim Four: Unfair and Deceptive Trade Practices

Finally, the Complaint alleges that Defendants engaged in unfair and deceptive trade practices in violation of the CCPA.  [#1 at ¶¶ 56-62]  To prevail on a CCPA cause of action, the plaintiff must prove the following elements:

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.

*Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1250 (D. Colo. 2011) (quoting *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 434-35 (Colo. App. 2006)); *see also* Colo. Rev. Stat. § 6-1-105.  Defendants argue that the Complaint fails to allege either an unfair or deceptive trade practice or an injury to a legally protected interest.  [#12 at 16-19]  Because the Court agrees that Plaintiff has failed to adequately allege an unfair or deceptive trade practice, the Court does not address Defendants' alternative argument.

According to the Complaint, Defendants engaged in unfair and deceptive practices by suspending Plaintiff's legitimate free trial offer "and entering an independent subscription for products using [Plaintiff's] CRM."  [#1 at ¶ 58]  Defendants further engaged in unfair and deceptive practices by using multiple usernames and merchant identifications to hide their subscription scheme.  [*Id.* at ¶ 57]  According to Plaintiff, these actions violate Section 6-1-105(1)(kkk) of the CCPA, which prohibits "knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice."  [#43]

13

"CCPA claims must be pled with the particularity required of fraud claims under [Federal] Rule [of Civil Procedure] 9(b)." *Pertile v. Gen. Motors, LLC*, No. 15-cv-0518-WJM-NYW, 2017 WL 4237870, at *8 (D. Colo. Sept. 22, 2017) (collecting cases); *see also Monson v. Country Preferred Ins. Co.*, No. 17-cv-02130-RBJ, 2018 WL 11016704, at *8 (D. Colo. Sept. 28, 2018) (applying Rule 9(b) to CCPA claim); *Carter v. Amica Mut. Ins. Co.*, No. 17-cv-02156-RM-MEH, 2018 WL 3093320, at *8 (D. Colo. June 22, 2018) (applying Rule 9(b) to the first element of a CCPA claim), *report and recommendation adopted* 2018 WL 4368668 (D. Colo. July 11, 2018). "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . ." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted). The Tenth Circuit thus "requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (quotation omitted).

Applied here, the Complaint fails to give a timeframe for either the alleged subscription scheme or the use of multiple usernames. More importantly, the Complaint fails to describe with particularity the alleged scheme. It asserts that Defendants—but does not state which Defendant—"put an existing 'free trial' agreement with a legitimate merchant on hold" [#1 at ¶ 18], but fails to provide any detail about how the Defendants put the free trial agreement on hold. Do Defendants do so surreptitiously, such as by hacking into the computer servers? Do Defendants purport to be one of Plaintiff's representatives? Do Defendants simply offer a better rate or service? The Complaint does not provide any detail. The Complaint then alleges that Defendants—but again does not state which Defendant—"create an entirely new order, using their unauthorized

14

access, and reroute it as a brand new subscription transaction over a new 'mid.'" [*Id.*] But, once again, the Complaint is devoid of detail. What did Defendants access to create the new order—the customer's data or Plaintiff's systems and methods? How is the access unauthorized—did the customer give access initially and Defendants exceeded this access or did the Defendants hack into the customer's information? And, for that matter, what is a "mid" and how did Defendants use a "mid" to create a new subscription transaction?[10]

The Court recognizes that the computer fraud alleged here is not the same as a simple fraudulent misrepresentation, and thus the time, place, and identity requirements of Rule 9(b) may not apply perfectly. Nonetheless, Rule 9(b) requires more particularity than that which is alleged in this Complaint. At a minimum, Rule 9(b) requires sufficient detail to inform Defendants—and this Court—as to the precise details of the alleged fraudulent scheme. The Complaint fails that requirement. Accordingly, the Court respectfully RECOMMENDS that Plaintiff's CCPA claim be DISMISSED. Nonetheless, because it is possible that Plaintiff could plausibly plead a CCPA claim, the Court RECOMMENDS that Claim Four be DISMISSED WITHOUT PREJUDICE. *Reynoldson*, 907 F.2d at 127.

---

[10] In its response, Plaintiff asserts that Defendants "purport to provide a service to Plaintiff's merchant clients for the limited purpose of analyzing sales data." [#21 at 17] But neither the term "sales" nor the phrase "sales data" is used anywhere in the Complaint. [#1] Moreover, it is unclear from this statement—and more importantly, unclear from the Complaint—whether Defendants actually provide a service to the customers or merely "purport" to do so. Similarly, the response states that Defendants' conduct harms Plaintiff because "to the credit card provider, it appears as though the charge was generated by the Plaintiff and not by the Defendants (who still reap the benefit of the charge)." [#21 at 17] But these allegations are nowhere to be found in the Complaint.

IV.  **CONCLUSION**

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss [#12] be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**.[11]

DATED: October 27, 2021                    BY THE COURT:

                                                        s/Scott T. Varholak
                                                        United States Magistrate Judge

---

[11] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).